Petition of CARROLL TOWING CO., Inc.

NASSAU BARGE CORPORATION v. THE FRED B. DALZELL et al.

DALZELL v. UNITED STATES et al.

THE JOHN CARROLL.

THE L. K. CHRISTIE.

Nos. 17495, 17305, 17647.

District Court, E. D. New York.

June 25, 1948.

Foley & Martin, of New York City (Christopher Heckman and Louis J. Lawrence, both of New York City, of counsel), for petitioner.

Burlingham, Veeder, Clark & Hupper, of New York City (Fred Conger, of New York City, of counsel), for Fred B. Dalzell.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Gilbert S. Fleischer, of New York City, of counsel), for the United States.

GALSTON, District Judge.

By stipulation at the trial, the petition for limitation of the Carroll Towing Co., Inc. and the libels of the Nassau Barge Corporation, owner of The L. K. Christie, and of Fred B. Dalzell, were tried together.

On September 29, 1944 the tug John Carroll had in tow two wooden deck scows, The L. K. Christie and The South Bend. These scows were on the tug's port side, with The L. K. Christie forward and The South Bend behind her. As she was lying off Piers 16 and 17 in the East River, on the Brooklyn side, about to enter the slip, The South Bend was struck by The Fred B. Dalzell, a tug of the libellant Dalzell, which was assisting the ship Kenesaw Mountain, owned or controlled by the United States Government, with resultant damage to the tug and to the scow Christie.

The Kenesaw Mountain, assisted by several tugs, had come out of the slip at Pier 19, which was somewhat south of where the Carroll tow was lying. The Kenesaw Mountain then straightened out and proceeded up the East River in the direction of the Brooklyn Bridge, holding a course about three hundred feet off the Brooklyn piers, with two Dalzell tugs on her starboard side and one on her port side. At that time The Kenesaw Mountain was using her own engines.

John Lesica, the captain of The John Carroll, explained that prior to getting off the Brooklyn piers he had picked up the two barges on the Manhattan side of the East River, had crossed the river and was headed for Pier 17. At the pier he saw the tug Corning which was picking up the outermost barge of those lying at Pier 17. Lesica was also bent on taking a barge which he had been informed was somewhere around the north side of Pier 17. As he arrived off the pier end he observed the four barges on the end of Pier 17 with two barges tandem to them, heading up the river. They obstructed the slip on the south side of Pier 17. The Corning was on the south side of Pier 16 with two barges on her starboard side. With that situation existing, the tug Carroll was stopped about 15 or 20 feet from The Corning. Lesica could not see over the barges on Pier 17, where the scow that he was to pick up was lying. Nor was there room to go in the slip. As The Corning moved forward to get inside the barge that she was to pick up so as to place it on her port side, Lesica gave his wheel a turn ahead and a turn back just to stop the way. His estimate was that he might have moved 5 or 10 feet ahead, and then a few revolutions of his propeller back. He was positive that he never made a backing movement, but only one astern sufficient to stop the way. When in that position, and at an angle heading towards the south end of Pier 16 and The Corning, he heard an alarm of The Kenesaw Mountain, which was followed by an alarm of the Dalzell tug. He found that in the congested area the only thing that he could do was to swing his stern to the right, but he could not go more than 5 or 6 feet because of The Corning's position. That maneuver he determined gave clearance to the steamer, but not enough room for the Dalzell tug. Lesica denied that he at any time crossed the bow of The Kenesaw Mountain on heading into the slip when crossing the East River, and also denied that he had, after the ship had sounded an alarm, reversed The Carroll's engines and backed out toward the ship and the tug Dalzell for a distance of approximately 50 feet.

Whether The Carroll had crossed the bow of The Kenesaw Mountain while heading into the slip and thereafter reversing her engines and backing out, as testified to by The Kenesaw Mountain witnesses, is the crux of the case. I am

obliged to resolve that issue in favor of the version given by Captain Lesica. He is confirmed by the captain of The South Bend, and more particularly by a disinterested witness, Hoffman, the captain of The Corning. Confirmation is given also by the captain of the scow Christie, and as to part of the story also by Hughes, who at the time of the collision was employed on the dredge, Governor Warfield, of the Arundel Corporation. He fixed the location of the dredge at about 500 feet off the end of Brooklyn Pier 12. Though he did not see the collision at the moment of impact, he was able to testify that he saw The Corning and several deck scows off the end of Pier 16; that he saw The Carroll with her two boats alongside the stern of The Corning. Also he saw The Kenesaw Mountain coming up with her tow boats, one of which was trailing astern. It was an alarm signal that attracted his attention, and at that time The Carroll was trying to get in to the pier. He saw no backward movement of The Carroll flotilla. No fault can be ascribed to The Carroll.

It would seem that fault must be ascribed to The Kenesaw Mountain. No adequate reason is shown why she had to navigate so close to boats off the pier ends. There was a wide expanse of free water, and she was not justified in demanding a right of way in the circumstances that prevailed at the time of the collision. The Nassau Barge Corporation may have a decree against the United States of America, as may also The Fred B. Dalzell, but no fault is found with the operation of the tug Carroll, and the libels against the Carroll Towing Company will be dismissed. Nor can fault be ascribed to The Fred B. Dalzell. The record fails to disclose that the mate in charge of her operation committed any act of negligence. The navigation of The Fred B. Dalzell was certainly restricted by the presence on her port side of The Kenesaw Mountain, and of the tug Dalzellite astern of The Kenesaw Mountain on her port side. The testimony of the witnesses indicates convincingly that the danger of collision was not apparent to The Fred B. Dalzell less than a minute or two before the collision took place.

The only maneuver open to her was to order her line to the steamer cast off, and that was done.

Concurrently with the filing of this opinion appropriate findings of fact and conclusions of law will be filed.